```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

|  |  |  |
|---|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19cv343 |
| BLUE CROSS & BLUE SHIELD OF NORTH CAROLINA, and FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This is a dispute over insurance coverage. Plaintiff Atlantic Specialty Insurance Company ("Atlantic") and Defendant Federal Insurance Company ("FIC") issued separate insurance policies to Defendant Blue Cross and Blue Shield of North Carolina ("BCBS-NC"). When BCBS-NC sought coverage under those policies in connection with its defense of a multi-district litigation action, Atlantic and FIC initially came to a defense-sharing agreement but Atlantic then brought this action for a declaration of its rights. (Doc. 36.) BCBS-NC and FIC now move to dismiss Atlantic's complaint, and Atlantic seeks to file supplemental briefing. (Docs. 39, 41, 49.) For the reasons set forth below, BCBS-NC's motion to dismiss or in the alternative to stay (Doc. 39) will be denied, and FIC's motion to dismiss (Doc. 41) will be granted in part and denied in part.

**I. BACKGROUND**

   **A. Facts**

Atlantic provided a primary Managed Care Errors and Omissions Liability Policy ("E&O Policy" or "the Atlantic Policy") to BCBS-NC with limits of $10 million in excess of a $5 million retention. (Doc. 36 ¶ 8.) FIC provided a primary Directors and Officers Liability Policy ("D&O Policy" or "the FIC Policy") to BCBS-NC with limits of $15 million in excess of a $1.5 million retention per antitrust D&O claim. (Id. ¶ 9.) BCBS-NC and other Blue Cross Blue Shield affiliates ("the Blues") were subsequently sued in class actions alleging antitrust violations; these class actions have been consolidated into a multi-district litigation action that is currently pending in the Northern District of Alabama ("the MDL Action"). (Id. ¶ 11.) BCBS-NC sought coverage for the MDL Action from both Atlantic and FIC for reimbursement of defense expenses and indemnity. (Id. ¶¶ 11-12.) Both insurance companies initially agreed with BCBS-NC that their respective policies provided coverage for the MDL Action.

Atlantic's and FIC's policies ordinarily require their respective retentions to be paid directly by BCBS-NC. (Id. ¶¶ 16, 18.) However, Atlantic and FIC came to an agreement that altered this arrangement. According to the alleged terms of this agreement, once BCBS-NC exhausted FIC's $1.5 million retention, triggering FIC's obligation to reimburse BCBS-NC's reasonable

2

defense costs in the MDL Action, FIC's payments under its D&O Policy would erode Atlantic's $5 million retention ("Defense Agreement"), subject to a reservation of both parties' rights under their respective policies with BCBS-NC. (Id. ¶¶ 16, 113, 172.) In exchange, Atlantic and FIC agreed that once BCBS-NC incurred reasonable defense expenses in excess of Atlantic's $5 million retention, Atlantic and FIC would advance future reasonable defense expenses on a pro-rata basis: Atlantic would pay 40 percent and FIC would pay 60 percent, based on their respective limits of liability on their policies -- $10 million for Atlantic and $15 million for FIC. (Id. ¶ 15.) Atlantic alleges that, at the time the complaint was filed, it has reimbursed FIC $600,000 under the Defense Agreement and reimbursed BCBS-NC at least $2.1 million for incurred defense expenses in the MDL Action. (Id. ¶ 19.)

Atlantic's complaint alleges that, in October 2018, FIC unilaterally repudiated the provision of the Defense Agreement regarding the pro-rata sharing of defense expenses and reduced its contribution to BCBS-NC's defense costs retrospectively and prospectively because it believed it had paid for loss not covered under its D&O Policy. (Id. ¶ 20.) FIC has refused to advance additional defense costs to BCBS-NC until BCBS-NC incurred defense expenses covered by FIC's Policy in excess of $5,879,126 -- the amount FIC claims it has overpaid. (Id.) BCBS-NC has not challenged FIC's decision regarding its repudiation of the Defense

3

Agreement. (Id. ¶ 23.) However, BCBS-NC now has begun relying entirely on Atlantic for reimbursement of 100 percent of its defense costs in defending the MDL Action, since it believes that it has exhausted Atlantic's $5 million retention. (Id. ¶ 22.) In order to protect its interests and avoid allegations of bad faith, Atlantic has agreed to continue to reimburse 100 percent of BCBS-NC's reasonable defense expenses. (Id. ¶ 25.) Atlantic emphasizes, however, that it believes it is no longer bound by the terms of the Defense Agreement and, as a result, it argues that BCBS-NC has failed to exhaust Atlantic's $5 million retention absent the contribution FIC has renounced. (Id.)

B. Procedural History

Atlantic filed an original complaint in March 2019. (Doc. 1.) All named Defendants filed motions to dismiss in August 2019. (Docs. 24, 26, 28.) On September 16, 2019, Atlantic filed an amended complaint ("complaint"). (Doc. 36.) BCBS-NC and FIC filed motions to dismiss on September 30, 2019.[1] (Docs. 39, 41.) Atlantic filed responses to both motions (Docs. 44, 45), and BCBS-NC and FIC filed reply briefs. (Docs. 47, 48.) On May 20, 2020, Atlantic filed a motion for leave to file supplemental briefing. (Doc. 49.) BCBS-NC then filed a response opposing Atlantic's request for supplemental briefing. (Doc. 51.)

---

[1] Atlantic initially included BCS Insurance Company as a Defendant in the complaint, but later voluntarily dismissed it. (Doc. 38.)

4

## II. ANALYSIS

### A. Blue Cross and Blue Shield of North Carolina

Atlantic's complaint contains nine counts against BCBS-NC. (Doc. 36 ¶¶ 128-163.) Three counts relate to whether terms of Atlantic's E&O Policy bar coverage for the MDL Action (Counts I, II, and III). Two counts relate to whether BCBS-NC has exhausted its retention under the E&O Policy (Counts IV and V). Three counts relate to BCBS-NC's compliance with a clause in the E&O Policy that requires BCBS-NC to provide Atlantic with requested information (Counts VI, VII and VIII). The final count relates to whether Atlantic is entitled to reimbursement for defense expenses paid to BCBS-NC (Count IX). BCBS-NC moves to dismiss or, in the alternative, stay the lawsuit under the court's discretionary authority to determine when to hear a declaratory judgment action. (Doc. 39.)

#### 1. Related Claims and Prior or Pending Litigation Provisions

Atlantic seeks a declaration that there is no coverage for the MDL Action because the claims asserted against BCBS-NC fall under either the "Related Claims" exclusion or the "Prior or Pending Litigation" exclusion in the E&O Policy.[2] (Doc. 36 ¶¶ 128-

---

[2] Specifically, Atlantic points to a prior class action, also alleging antitrust violations and in which BCBS-NC was a defendant, called Love v. Blue Cross Blue Shield Assoc. et al., No. 03-21296 (S.D. Fla.), a component of an MDL proceeding styled In re Managed Care Litigation, No. 1:00-MDL-1334. (Doc. 36 at ¶¶ 46-67.) The Love litigation settled prior to the commencement of the current MDL Action. It is the Love case,

5

136.)  In response, BCBS-NC argues that Atlantic's lawsuit is premature and that permitting it to proceed, before the MDL Action is resolved, would encourage piecemeal litigation, risk contradictory factual findings between this court and the MDL court, and prejudice BCBS-NC in its defense of the MDL Action. (Doc. 40 at 2.)

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act gives federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). District courts have "great latitude" in deciding whether to exercise jurisdiction in a declaratory judgment action. See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (per curiam). The Fourth Circuit has enumerated several factors that a district court should consider in determining whether to exercise its discretion to entertain a declaratory judgment action. See id. These include whether "the declaratory relief sought: (1) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford relief from the uncertainty,

---

Atlantic contends, that constitutes either a "related claim" or "prior litigation."

6

insecurity, and controversy giving rise to the proceeding.'" Id. (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). Furthermore, the district court should consider (3) principles of federalism, efficiency, comity, and procedural fencing, id., and (4) whether "allowing [the] case to go forward would produce piecemeal litigation," id. at 424.[3]

After considering these factors, the court finds that it is appropriate to exercise its jurisdiction to hear this action. As to the first two factors, it is clear that a declaration in this case would serve the "useful purpose" of clarifying Atlantic's coverage obligations to BCBS-NC as to the MDL Action under the E&O Policy and would "afford relief from the uncertainty" currently clouding the issue. See Ind-Com, 139 F.3d at 422. Under the terms of the E&O Policy, once its $5 million retention is exhausted as to a covered claim, Atlantic is obliged to defend BCBS-NC as to that claim. (Doc. 36 ¶¶ 93-94; Doc. 36-1 at 13, 27-28.) Just last year, the Fourth Circuit noted the appropriateness of duty-to-defend cases for declaratory judgments because they did not risk the court rendering a purely advisory opinion as to

---

[3] Additional factors exist when there are parallel state court proceedings. See Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376-77 (4th Cir. 1994) (discussing "additional concerns" a court should consider when there is parallel state litigation). However, there are no parallel state court proceedings here. While the lack of a state court proceeding is not dispositive, it remains a "significant factor" in the district court's determination of whether to hear a declaratory judgment action. See Ind-Com, 139 F.3d at 423.

7

"hypothetical and contingent" injuries. See Trustgard Ins. Co. v. Collins, 942 F.3d 195, 200 (4th Cir. 2019). Atlantic is allegedly bearing an ongoing injury: advancing defense costs to BCBS-NC in an MDL Action that has been pending for over seven years and that, as BCBS-NC acknowledges, does not have a definite end in sight. (See Doc. 40 at 3.) Atlantic understandably wants to resolve its coverage obligations to BCBS-NC as to the MDL Action.

The third factor is less relevant and at best neutral. There is no pending state court proceeding for considerations of federalism or comity. Nor is there any indication that one party is engaging in procedural fencing, e.g., as a race for *res judicata*. The fourth factor, the risk of piecemeal litigation, also favors Atlantic. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Gannett Co. v. Clark Constr. Grp., Inc., 286 F.3d 737, 744 (4th Cir. 2002) (quotations omitted). Piecemeal litigation is not synonymous with "more litigation." Atlantic is not a party to the MDL Action. Nor will the MDL Action address insurance coverage disputes. In other words, BCBS-NC has not shown that the precise issue that Atlantic brings -- whether the MDL Action is covered by the E&O Policy -- will be decided in the MDL Action. There thus seems to be little risk of this court "consider[ing] the same issue . . . and possibly reaching different results" from those of the MDL court. See id.

8

Case 1:19-cv-00343-TDS-JEP   Document 52   Filed 09/08/20   Page 8 of 20

BCBS-NC's main argument against this court hearing Atlantic's declaratory judgment action is that permitting the case to go forward would "entangle" this court with the MDL Action and "prejudice" BCBS-NC by forcing it to take potentially contradictory positions in this action and the MDL Action.[4] (Doc. 40 at 8.)

Other courts that have considered this issue in highly analogous circumstances have failed to find entanglement or prejudice to warrant dismissal. See Allied World Specialty Ins. Co. v. Indep. Blue Cross, No. CV 17-1463, 2017 WL 4922177 (E.D. Pa. Oct. 31, 2017); Allied World Surplus Lines Ins. Co. v. Wellmark, Inc., No. 4:17-CV-117, 2017 WL 11179926 (S.D. Iowa June 27, 2017). Both Independence and Wellmark involved insurers who provided E&O liability insurance policies to a Blue Cross affiliate that was also a defendant in the MDL Action. In both cases, the insurer sought a declaration that its policy did not cover the Blue affiliate in the MDL Action because of a related claims or prior litigation exclusion provision. In both, the Blue defendant moved to dismiss the action as premature and prejudicial. And in

---

[4] BCBS-NC's primary concern about entanglement and prejudice appears to be about the scope of the Love settlement. (Doc. 40 at 10-11.) In at least one case one of the Blues has argued that the MDL Action is related to Love, thereby barring putative plaintiffs who were part of the Love settlement from joining the MDL Action. See Musselman v. Blue Cross & Blue Shield of Ala., No. 13-20050-CV, 2013 WL 4496509, at *1 (S.D. Fla. Aug. 20, 2013), aff'd, 684 F. App'x 824 (11th Cir. 2017) (granting defendants' motion to dismiss after finding that the claims in the MDL Action were related to Love).

9

both, the district court denied the motion to dismiss and allowed the case to go forward. See Independence, 2017 WL 4922177, at *4 n.5 ("Independence fails to demonstrate . . . [how] any other potential conflict, would prejudice its defense in the MDL Action."); Wellmark, 2017 WL 11179926, at *2 (finding no unnecessary entanglement with the MDL Action because Allied World was not a party to the underlying MDL Action and the MDL litigation did not "involve interpretations of insurance policy provisions, as Allied World's request for declaratory judgment does").

The same result should occur here. Atlantic is not a party to the MDL Action, and the MDL Action does not involve interpreting insurance policy provisions. Further, unlike in Independence and Wellmark, where the insurers were not advancing defense costs for the MDL Action, here Atlantic continues to advance BCBS-NC's defense costs. Dismissing or staying this action thus risks prejudicing Atlantic. Accordingly, this court finds that the factors discussed above weigh in favor of exercising jurisdiction and outweigh any risk of entanglement with the MDL Action.[5]

### 2. Assistance and Cooperation Clause

Atlantic also seeks a declaration regarding the scope of an

---

[5] BCBS-NC cites to several other cases that it says support its position that the court should stay this action until the MDL Action is resolved. (Doc. 40 at 20-21.) These cases are distinguishable because each involved the duty to indemnify rather than the duty to defend. Cf. Trustgard, 942 F.3d at 200 ("[S]uits about the duty to indemnify -- unlike the duty-to-defend suits -- would ordinarily be advisory when the insured's liability remains undetermined.").

10

"Assistance and Cooperation" clause in the E&O Policy requiring BCBS-NC to provide certain information to Atlantic for claim resolution, specifically seeking an order that BCBS-NC is required to comply with the clause to seek coverage under the policy. (Doc. 36 ¶¶ 143-160.) BCBS-NC contends that it has been responsive to Atlantic's requests, that many of the requests are unreasonable, and that the declaration is premature because the MDL Action is ongoing. (Doc. 40 at 14-17.)

After considering the same factors as above, the court finds that these counts are likewise appropriate for declaratory treatment. Atlantic is seeking a declaration that BCBS-NC has failed to provide required documents and information and that this failure prevents BCBS-NC from receiving coverage under the E&O Policy. (Doc. 36 ¶¶ 143-160.) While the complaint is not a model of clarity on this front, the court reads Atlantic's request as backward-looking, i.e., that BCBS-NC's alleged prior failure to comply with the Assistance and Cooperation Clause precludes it from seeking coverage for the MDL Action. (See Doc. 36 ¶ 146 ("To date . . . BCBS-NC has not provided the majority of the information or documents."); id. ¶ 155 ("[W]hether BCBS-NC complied with the Assistance and Cooperation Clause.") (emphasis added).) As such, declaratory relief will "clarify[] and settl[e] the legal relations in issue" and will "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." See

11

Ind-Com, 139 F.3d at 422 (quotations omitted).  Thus, BCBS-NC's motion to dismiss these counts will be denied.

### 3. Remaining Counts

In its briefing, BCBS-NC does not address the counts in Atlantic's complaint that concern whether BCBS-NC has exhausted its retention under the E&O Policy and whether Atlantic is entitled to reimbursement for defense expenses already paid to BCBS-NC. Accordingly, it has offered no grounds to dismiss these counts and its motion to dismiss will be denied.  The court also finds that these remaining counts are equally suitable for a declaratory judgment.  Indeed, these counts are contingent on the resolution of the others, e.g., whether Atlantic is entitled to reimbursement for defense expenses already paid depends in part on whether its policy with BCBS-NC covers the MDL Action.  Accordingly, insofar as BCBS-NC has moved to dismiss these remaining counts, that motion will be denied.

### B. Federal Insurance Company

Atlantic's complaint contains three counts against FIC: breach of the Defense Agreement (Count X), equitable contribution (Count XI), and subrogation (Count XII).  (Doc. 36 ¶¶ 164-183.) FIC moves to dismiss these three counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 41.)

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint" but not to resolve the merits of a

claim. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(6)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering the motion, a court will "assume as true all . . . well-pleaded facts and draw all reasonable inferences in favor of the plaintiff." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017). Under this standard, each count will be addressed in turn.

### 1. Breach of the Defense Agreement

Atlantic argues that FIC "unilaterally repudiated" the Defense Agreement and that this relieves Atlantic of its agreement to let FIC's payments erode BCBS-NC's retention under the E&O Policy between Atlantic and BCBS-NC. (Doc. 36 ¶¶ 167-168.) In response, FIC argues 1) that Atlantic's request for declaratory judgment is not proper and 2) that Atlantic fails to state a claim because there was no agreement and, even if there was, there was no breach. (Doc. 42 at 10-17.)

The first argument is more easily dealt with. FIC argues that the court should dismiss Atlantic's breach of contract claim because "all rights have accrued" and so declaratory relief "would have no practical effect." (Id. at 11.) This argument misunderstands Atlantic's claim. Atlantic alleges that it is

13

actively shouldering injuries -- advancing 100 percent of defense costs to BCBS-NC in ongoing litigation in the MDL Action. As such, this is not a declaration involving wholly past conduct with damages that have already occurred. So long as a court, after weighing the pertinent factors discussed above, is convinced in its discretion that a declaratory judgment would serve a useful purpose in clarifying the parties' rights and obligations, it may proceed with the action. See Ind-Com, 139 F.3d at 422. Further, even if Atlantic could have brought another claim, the "existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." See Fed. R. Civ. Pro. 57.

As to the second argument -- breach of contract -- FIC's primary contention is that Atlantic and FIC, in whatever arrangement they had, expressly agreed to fully reserve their rights under each party's insurance policy with BCBS-NC. (Doc. 42 at 14-16). Accordingly, FIC ceased advancing defense costs to BCBS-NC until BCBS-NC incurred costs that made up the amount FIC believes it overpaid for uncovered defense costs. BCBS-NC then turned to Atlantic for 100 percent of its defense costs.

Under North Carolina law, a breach of contract claim requires (1) the existence of a valid contract and (2) breach of the terms of the contract. Wells Fargo Ins. Servs. v. Link, 827 S.E.2d 458, 472 (N.C. 2019). Complicating matters here, neither Atlantic nor FIC have provided a written Defense Agreement, and it is unclear

14

if such a document exists. Both parties have provided dueling letters attached to either the complaint or motion to dismiss that purport to either prove the existence of an agreement or lack thereof. In reviewing a 12(b)(6) motion, the court may "consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A review of the attached documents here shows protracted negotiations and some uncertainty regarding the terms of any agreement between Atlantic and FIC.[6] Despite this uncertainty, at some point the parties clearly began sharing BCBS-NC's defense costs for the MDL Action. Atlantic alleges a breach of the agreement occurred in an October 12, 2018, letter. (See Doc. 36-3.) In the letter, FIC's counsel acknowledges that FIC had been advancing 100 percent of BCBS-NC's defense costs allocable to the D&O Policy, subject to a 60-40 allocation of costs between FIC and Atlantic. (Id. at 1.) FIC further states that, because it believes a portion of BCBS-NC's defense costs are not covered by the D&O Policy, it would begin to apply a "coverage discount" going

---

[6] See, e.g., Doc. 36-2 at 3 ("Federal and Atlantic Specialty are in the process of finalizing an arrangement for allocating covered Loss between their respective Policies."); Doc. 43-4 at 1 ("For more than 18 months . . . Federal has been seeking an agreement with [Atlantic] regarding this allocation issue . . . However, [Atlantic] still has not consented to, or substantively responded to, the allocation arrangement proposed by Federal.") (emphasis added).

15

forward and would cease advancing BCBS-NC defense costs until BCBS-NC had incurred defense costs to offset the amount FIC believes it had overpaid -- approximately $5.9 million. (Id. at 2-3.) The letter also states that "Federal [would] continue to allocate 60% of BCBS-NC's defense costs to the D&O insurance program, consistent with our prior agreement with [Atlantic]." (Id. at 2.)

To survive a Rule 12(b)(6) motion, Atlantic must have pled sufficient facts to state a plausible claim for breach of contract. See Iqbal, 556 U.S. at 678. Even drawing all reasonable inferences in favor of Atlantic, the court finds that, even if there was a valid agreement between Atlantic and FIC, Atlantic has not alleged any facts that support evidence of a breach by FIC because each party expressly reserved its rights as to its respective policies with BCBS-NC. (See, e.g., Doc. 43-7 at 2 ("Federal will advance 60% of such Defense Costs and [Atlantic] will be responsible for advancing the remaining 40%, subject of course to Federal's continuing reservation of rights."); Doc. 45 at 15 ("Federal and Atlantic agreed that payments made pursuant to the Defense Agreement were subject to each insurer's reservation of rights with respect to coverage under each insurer's policy.").)

A reservation of rights "allow[s] a liability insurer to provide a defense while still preserving the option to later litigate and ultimately deny coverage." 14A Couch on Insurance § 202.39. FIC's D&O Policy explicitly permits FIC, in the event

16

FIC and BCBS-NC cannot agree on an allocation of defense costs, to make its own determination on covered costs until a different allocation is otherwise determined. (Doc. 42 at 16; Doc. 43-1 at 48). Further, the D&O Policy permits FIC to apply any allocation of defense costs retroactively, notwithstanding prior advancements. (Id.) FIC exercised both these rights as to its defense of BCBS-NC in the MDL Action, as Atlantic was assuredly aware it could do -- indeed, Atlantic's complaint acknowledges as much. (See Doc. 36 ¶ 13 ("Federal agreed to reimburse 100% of reasonable defense expenses . . . subject to a reservation of rights.").) What Atlantic perceives as a breach of contract, FIC more accurately sees as invoking its right under its D&O Policy with BCBS-NC to allocate BCBS-NC's defense costs between covered and non-covered amounts both retroactively and prospectively. In essence, the parties' arrangement was to agree until they no longer agreed -- to share expenses until either side decided to no longer do so. Because Atlantic has failed to state a claim for breach of contract, the court will grant FIC's motion to dismiss as to Count X.

### 2. Contribution and Subrogation

The final two counts of the complaint deal with equitable contribution and subrogation rights. Equitable contribution permits the court to apportion a loss between multiple insurers who cover the same risk so each pays its fair share. See Nebel v.

17

Nebel, 28 S.E.2d 207, 213 (N.C. 1943) ("The general rule is that one who is compelled to pay or satisfy the whole or to bear more than his just share of a common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares."). Subrogation permits an insurer to step into the shoes of its insured to recover from a third-party who is liable for any amounts paid by the insurer to the insured. 16 Couch on Insurance § 222:5. Put more clearly, the subrogation issue is whether FIC owed a payment to BCBS-NC under its D&O Policy for the MDL Action that Atlantic in fact paid. In North Carolina, "An insurer who has a duty to defend its insured may not recover its defense costs, under a theory of equitable subrogation, from another insurer who also has a duty to defend the insured." Nationwide Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 470 S.E.2d 556, 559 (N.C. App. 1996) (citation omitted). However, "an insurer may recover under [a] subrogation theory if the insurer defends an insured with the good faith belief that he has an interest to protect although the insurer in fact has no duty to defend and no liability." Id.

The nub of these two counts is that Atlantic is alleging that it has paid -- or will pay, if it continues to advance BCBS-NC's defense costs -- defense costs to BCBS-NC that FIC is liable for

18

under its D&O Policy with BCBS-NC.[7] In both instances, an answer depends on a resolution of the underlying coverage obligations from both insurers to BCBS-NC -- whether each insurer had a duty to defend BCBS-NC in the MDL Action, the scope of that duty, and which defense costs were covered by the respective policies.

While Atlantic's claims are contingent and thus to a certain extent speculative,[8] dismissal on that basis is unwarranted. Should Atlantic succeed on its claims against BCBS-NC, the court may be required to address Atlantic's contribution and subrogation claims against FIC. See Carcaño v. Cooper, 350 F. Supp. 3d 388, 414 (M.D.N.C. 2018) (denying a motion to dismiss on similar reasoning); Dimensional Music Publ'g, LLC v. Kersey ex rel. Estate of Kersey, 448 F. Supp. 2d 643, 653 (E.D. Pa. 2006) ("Simply because the outcome of one claim is contingent upon the outcome of another claim in the case does not mean that the first claim cannot be alleged or that the first claim is not ripe." (citations omitted)). However, if the court dismissed these claims, Atlantic could run into statute of limitations issues. See Nationwide, 470 S.E.2d at 560 (discussing the statute of limitations in the

---

[7] The complaint alleges that Atlantic had already paid FIC $600,000 and BCBS-NC at least $2.1 million for defense expenses in the MDL Action. (See Doc. 36 ¶ 19.)

[8] Indeed, both parties speculate at length in their briefs as to what might occur with their respective underlying coverage disputes with BCBS-NC and the corresponding effect on the contribution and subrogation claims. (See Doc. 42 at 18-21; Doc. 45 at 17-21; Doc. 47 at 8-11.)

19

subrogation and contribution context). Accordingly, the court will deny FIC's motion to dismiss as to Counts XI and XII in Atlantic's complaint.

### III. CONCLUSION

For the reasons stated above,

IT IS THEREFORE ORDERED that Defendant Blue Cross and Blue Shield of North Carolina's motion to dismiss (Doc. 39) is DENIED, Defendant Federal Insurance Company's motion to dismiss (Doc. 41) is GRANTED as to Count X, which is DISMISSED, and DENIED as to Counts XI and XII, and Plaintiff Atlantic Specialty Insurance Company's motion for leave to file supplemental briefing (Doc. 49) is DENIED as moot.

/s/   Thomas D. Schroeder
United States District Judge

September 8, 2020